

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-3778
Re: Validity of the allowance,
by Senate Resolution No.
185, of $50.00 per month
for stenographic and other
expenses of members of the
Senate between legislative
sessions.

We are pleased to comply with your letter of July
17, 1941, which reads as follows:

"The following is a copy of a letter
received by this department from Hon. Bob
Barker, Secretary of the Senate:

"'The following is contained in Senate
Resolution No. 185, adopted by the Senate,
page 2495, Senate Journal July 3, 1941:

"'Resolved, That each Senator be allowed
the sum of not more than $50.00 per month from
the adjournment of the Regular Session of the
Forty-seventh Legislature until the convening
of the next Special or Regular Session for the
purpose of defraying the expense of hiring a
part time stenographer to be used only for the
purpose of transacting business incident to
his office as State Senator, and only for State
business; and further for the purpose of defray-
ing the expense of telephone, telegraph and
postage used only in State business and in-
cident to his office as State Senator.

"'Please state how these items should be
handled.'

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Geo. H. Sheppard, Page 2

"The question has arisen as to whether the above quoted resolution is in conflict with certain provisions of the Constitution limiting the pay and remuneration of a State Senator; also, as to whether a State Senator may draw an expense account for his expenses incurred in carrying on his general duties as a Senator between the sessions. This department desires your answer to the above question before replying to the letter presented by Hon. Bob Barker."

Section 11 and Section 24 of Article III of the Constitution of Texas read, respectively, as follows:

Section 11. "Each House may determine the rules of its own proceedings, punish members for disorderly conduct, and, with the consent of two-thirds, expel a member, but not a second time for the same offense."

Section 24. "Members of the Legislature shall receive from the public Treasury a per diem of not exceeding $10.00 per day for the first 120 days of each session and after that not exceeding $5.00 per day for the remainder of the session.

"In addition to the per diem the members of each House shall be entitled to mileage in going to and returning from the seat of government, which mileage shall not exceed $2.50 for every 25 miles, the distance to be computed by the nearest and most direct route of travel, from a table of distance prepared by the Comptroller to each county seat now or hereafter to be established; no member to be entitled to mileage for any extra session that may be called within one day after the adjournment of a regular or called session."

The question presented by your request has never been before the Courts of Texas. Our research has not disclosed any case in any jurisdiction outside of Texas involving the allowance of expenses to members of the Legislature between sessions except in relation to members of a special committee charged with extra-

ordinary duties between sessions. The Texas case of Terrell v. King, 14 S. W. (2d) 786, by the Texas Supreme Court is representative of this line of cases and will be subsequently noted.

The payment of expenses to members of the Legislature, eo nomine, is not prohibited by the Constitution of Texas. It is well settled that an appropriation to members of the Legislature under the guise of expenses is invalid if in reality the appropriation represents additional compensation, or salary, or reward, or pay.

Many of the States have constitutional provisions substantially the same as those of the Texas Constitution, above quoted. In construing these provisions, there has been established a distinction between personal expenses and legislative expenses. Beyond the definition that "legislative expenses are those necessary to enable the Legislature to properly perform its functions" the distinction between personal expenses and legislative expenses has not been clearly drawn.

It is a known fact that numerous expenses incident to a session of the Texas Legislature have been historically allowed and paid out of the per diem and contingent expense appropriation by each Legislature. Also, that the salaries and expenses of employees engaged in closing out the work of a session, and in taking care of the Legislative halls and certain legislative business between sessions, have been allowed and paid out of this appropriation. And that the expenses of special legislative committees functioning between sessions, under assignment from the Legislature while in session, have been allowed and paid.

The allowance in Senate Resolution No. 185 of Fifty Dollars per month to each Senator for stenographic and other expense between sessions is the first attempt by either the House or the Senate to allow and authorize the payment of expenses of this nature. Of course, if valid for the members of the Senate, a similar allowance would likewise be valid for members of the House.

We approach a decision in this perplexing matter with certain well settled principles in mind. Provisions of State Constitutions are not grants but limitations of legislative power and should not be construed to place limitations beyond their clear meaning. The courts recognize that the legislative department, within its legitimate sphere, possesses all power not withheld by the Constitution. The Constitution is a restraining instrument and the courts, empowered to declare the law, are required to subject challenged acts of the Legislature to constitutional tests.

In exercising such power the courts merely declare in favor of the superior law, the Constitution. The Legislature cannot by the use of words prevent judicial inquiry as to the object and effect of a statute; nor can the Legislature by a declaration transform a private benefit into a public use or increase compensation by a declaration that it was intended for expenses. A legislative declaration of facts is subject to the test of reason and judicial knowledge.

The distinction between legislative expenses and personal expense is to be observed. The power to allow the former inheres in the legislative function and may be exercised. The power to allow the latter does not so inhere and may not be exercised by the Legislature except to the extent of constitutional permission.

The Constitution of Texas does not expressly impose a limitation upon the power of the Legislature to provide for the expenses of the legislative department, nor upon the power to provide for the official or personal expenses of members. The object of construction, however, as applied to a written Constitution, is to give effect to the intent of the people in adopting it. In the case of all written laws it is the intent of the law giver that is to be enforced.

We are unwilling to give to Section 24 of Article III of the Constitution of Texas, adopted by the people on November 4, 1930, a strained or subtle meaning. The electorate in ratifying and adopting this provision, which gave it life, considered the provisions as the language fairly imports.

Prior to the adoption of Section 24, on November 4, 1930, the Constitution authorized compensation to members of the Legislature not exceeding Five Dollars per day for the first sixty days of the session and Two Dollars per day for the remainder of the session. This was compensation, salary, reward, pay. In addition thereto, the members were allowed mileage expense in going to and from the seat of government. No other expenses were expressly allowed. By the amendment in 1930, the compensation was raised to a per diem of not exceeding Ten Dollars per day for the first one hundred and twenty days of each session and Five Dollars for the remainder of the session. Again mileage expense was authorized. No other expense expressly was.

In the following cases the State Constitutions allowed members of the Legislature a certain salary, or compensation, or

per diem, and mileage expense. The Supreme Court of the State in each case applied the maximum *expressio unius est exclusio alterius* and held that in view of the constitutional provision for the payment of expense mileage there was a necessary implication that no other personal expenses could be paid. State Ex rel Griffith v. Turner, 117 Kan. 755, 233 Pac. 510; Dixon v. Shaw, 122 Okla. 211; 254 Pac. 500; State v. Clausen, 142 Wash. 450, 253 Pac. 805; Jones v. Hoss, 285 Pac. 205.

The Turner case involved an allowance to each member of the Legislature of "Five Dollars per day expense money for each day of any Regular or Special Session of the Legislature." The allowance was held invalid as being the payment of personal expenses as distinguished from legislative expenses.

The Shaw case involved allowances to the members of the Legislature in payment of the hotel room rent and meals while at the capital attending a session of the Legislature. It was held invalid.

The Clausen case held invalid a resolution of the House of Representatives allowing each member Five Dollars per day for expenses incurred in attending a session of the Legislature.

In the Jones v. Hoss, case, the Supreme Court of Oregon held unconstitutional an appropriation of "the sum of Five Dollars per day during said legislative session to each member of said legislative assembly for the payment of his incidental expenses." The court said:

"The implied limitation against personal expenses has no application to official or legislative expenses."

The Oregon Court refused to follow the South Dakota case of Christopherson v. Reeves, Ante, which will be reviewed.

In Ashton v. Ferguson, 164 Ark. 254, 261 S. W. 624, the court denied the validity of a statute appropriating One Hundred Dollars to each members of the Legislature for expenses incurred while attending an extraordinary session. It was declared by this court:

"Undoubtedly each of the Houses possesses the power to determine its necessary expenses, but in doing so it must proceed within constitutional restrictions, and is not permitted to dis-

Honorable Geo. H. Sheppard, Page 6

regard express constitutional provisions. The
Constitution provides in explicit and comprehen-
sive terms what payments shall be made to mem-
bers. The provision in this respect does not
express merely a grant of power, but it places
a limitation upon the power of the general assembly.
* * *. Each House may provide conveniences, such
as stationery, pencils, ink, telephone and tele-
graph, and other things for the use of the members,
and pay for same out of contingent expenses, but
it is quite another thing to attempt to make an
allowance of funds to a member to be used at will.
One is the payment of a legitimate expense, and
the other is an allowance placed at the disposal
of the member to be used at his own discretion and
will. One is a payment of necessary expenses of
the house itself, and the other is on allowance to
the members in spite of the provision of the Con-
stitution to the contrary. * * *." (Emphasis ours)

These cases are grounded upon the proposition that con-
stitutional provisions, such as those of Texas, fixing the compen-
sation of members of the Legislature for their services, and allow-
ing mileage, by necessary implication impose a limitation upon the
power of the Legislature to allow personal expenses to its members.
The expression in positive affirmative terms of the will of the
people that the members of the Legislature should receive a per
diem and a mileage expense implies the negative regarding addition-
al personal expenses.

The correlative proposition that, nonetheless, legisla-
tive expenses may be allowed, appears sound. This doctrine that
the authority to allow legislative expenses is necessarily implied,
or, that such expense is necessarily allowable as inherent in the
legislative branch of government, should be, in our opinion, zealous-
ly guarded lest it sanction evasions of fundamental constitutional
purposes and restrictions.

In contrast to the cases thus far noted, are the cases of
Christopherson v. Reeves, 44 S.D. 634, 184 N. W. 1015, and Scroggie
v. Scarborough, 160 S. E. 597.

In the first case the South Dakota Supreme Court held
that the Legislature could validly appropriate the sum of Two Hun-
dred Dollars to each member as expense allowance. The majority
opinion emphasized that the State Constitution did not expressly

limit the right of the Legislature to provide for the expenses
of its members, and held that the expense allowance was not
"compensation, but, on the other hand, that it provides ex-
pense money for a perfectly legitimate purpose." Two of the
members of the court dissented and in written opinions adopted
the views represented in the cases we have discussed.

In the second case mentioned, the Supreme Court of
South Carolina upheld an appropriation of Two Hundred and Sixty
Dollars for each member of the Legislature as expense money for
the session. The basis for the decision is stated by the court
as follows:

"However, in the view we take of the instant
case, it may be decided upon the assumption that
only official expenses are properly allowable
under the provisions of our Constitution, as we
find nothing in the record which would justify
us in deciding as a matter of fact that the ex-
penses for which members of the general assembly
are to be reimbursed by the appropriation in
question are other than official expenses. For
the Legislature, a coordinate branch of the gov-
ernment, this court has the highest respect, and
there is a presumption that the appropriation
was made for a proper purpose within the provi-
sions of the Constitution; * * *." (Emphasis
ours)

The cases of State Ex rel Weldon v. Thomason, 142 Tenn.
527, 221 S. W. 491, P. Peay v. Nolan, 157 Tenn. 222, 7 S. W. (2d)
815, and Peay v. Graham, 35 S. W. (2d) 568, are by the Supreme
Court of Tennessee.

The first case involved an appropriation of One Hundred
and Fifty Dollars for each of the members of the Legislature "for
stenographic work and other necessary expenses" during a session
of the Legislature. The second case involved an appropriation
of Seven Hundred and Fifty Dollars for expenses to each of the
members for postage, stenographic hire, and other necessary ex-
penses. The third case involved an appropriation of the sum of
One Hundred Dollars for stenographic hire and other extraordinary
official expenses "necessarily incurred by each member of the Leg-
islature at this extra session * * * in consequence of their duties
as Legislators, and the Legislature declares as a fact that every
member of this body has expended, at this extra session, at least
the amount above set out for the official expenses above mentioned."

Honorable Geo. H. Sheppard, Page 8

The first two cases were reviewed by the court in the third case as follows:

"In the Thomason case it was held (1) that no appropriation could be constitutionally made for an increase of a compensation to members of the general assembly; and (2) that an appropriation for official expenses, as distinguished from compensation may be constitutionally made. These propositions were re-affirmed in Peay v. Nolan. The cases differ in this: in the Thomason case it was conceeded that the appropriation was in fact for official expenses; in the Nolan case it was held that the appropriation, while nominally for official expenses, was in effect for compensation; this being the determinative fact in issue."

The appropriation of One Hundred and Fifty Dollars in the Thomason case was upheld; the appropriation for Seven Hundred and Fifty Dollars in the Nolan case was declared invalid as was the appropriation in the Graham case of One Hundred Dollars for twelve days of an extraordinary session. In the Nolan case the court said:

"We do not conceive that the court (in the Thomason case) intended by this statement to announce the rule that the Legislature could by the use of words prevent judicial inquiry as to the object and effect of a statute, or that the Legislature could by a declaration transform a private benefit into a public use, or increase compensation by a declaration that it was intended for expenses. The court is required to look to the substance and effect of an act, as well as to its letter, when called upon to determine whether the Legislature transcended the constitutional restraints. * * *." (Parenthetical insertion ours)

In the Graham case it was said:

"In Peay v. Nolan, the appropriation was $750 for each member for 75 days; in the instant case the appropriation is $100 for 12 days. The

Honorable Geo. H. Sheppard, Page 9

proportion is practically the same. In the former case it was held that the court could not reasonably assume that each and every member of the Legislature had incurred official expenses of $750. Neither can we reasonably assume that in this case each member incurred official expenses of as much as $100. From the language employed, it is apparent that the Legislature did not undertake to determine the exact amount expended by each member for official expenses.

"We have heretofore clearly recognized and now re-affirm the right of members of the Legislature to be re-imbursed for such official expenses as they may legitimately incur, to be ascertained and determined by such reasonable methods as its wisdom may suggest. An appropriation of any substantial amount for that purpose, which does not have for its basis some reasonably definite determination of the amount of official expenses incurred by the several members, does not satisfy the constitutional limitation, and for that reason cannot be sustained."

The doctrine of these cases is that an appropriation to members of the Legislature is constitutional only if for official or legislative expenses. That this is so must be visible in the appropriation. And this because of the reasonableness of the amount and the method employed to assure the expense paid to be a legislative expense.

In Hall v. Blan, 148 So. 601, by the Supreme Court of Alabama, the constitutionality of an Act described by the court as follows was under attack:

"The Act * * * purporting to give each member of the Legislature an allowance, not exceeding $4.00 per day, for 'reasonable expenses incurred by him because of and while in attendance upon the sessions of the Legislature.' We treat this as intended to cover personal expenses incurred in the performance of legislative duties, among which expenses are enumerated 'stenographic work, telephone and telegraph service, clerk hire,

stamps and like expenses.'"

In holding such Act unconstitutional under provisions of
the Alabama Constitution similar in all respects to those of the
Texas Constitution, the court said:

"For more than half a century, we think it
can be safely said, this section of the Constitu-
tion has been generally construed as fixing and
withdrawing from legislative power, the matter
of personal compensation and expense allowances
to Legislators while in attendance at legislative
sessions. Such has been the widely prevailing
construction of similar constitutional provisions
in other States. (There follows citations of au-
thorities) There is a distinction, under our
Constitution, between expenses of the Legisla-
ture, controlled by the legislative body, and
expenses incurred by the member on his own ac-
count and at his discretion within a maximum
limit."

Gallarno v. Long, 243 N. W. 719, involved an appropria-
tion to each member of the general assembly as follows:

"Each member of the general assembly * * *
shall be paid his actual necessary expenses in-
curred while in attendance at a session of the
Legislature, which shall in no case exceed $500
for any regular session. Sworn itemized claims
therefor shall be filed with the State Board of
Audits and the provisions of Chapter 25 of the
Code shall be applicable thereto."

The Supreme Court of Iowa rejected the appropriation up-
on the proposition that it contemplated personal expenses and not
legislative expenses and therefore amounted to additional compensa-
tion to the members of the Legislature.

Finally, there is the line of cases represented by the
Texas case of Terrell v. King, 14 S. W. (2d) 786, and Russell v.
Cone, 168 Ark. 989, 272 S. W. 678, which uphold an allowance of
expenses to special legislative committees functioning between ses-
sions of the Legislature. It is obvious that the expenses of mem-
bers of such committee are official or legislative expenses. The
members assigned are engaged in activities peculiarly legislative

and occupy a status different from other members of the Legislature between sessions. The justification for such expense allowance, expressed by the court in the Terrell case as follows, manifestly is not applicable to an allowance, between sessions, to all members of the Legislature, or to the Senate, not vested with analogous extraordinary duties between sessions:

"Since legislative committees of inquiry and investigation, functioning at points remote from the Capitol, or functioning at the Capitol between sessions of the Legislature, may be essential to the effective exercise of the state's legislative power, we must imply power on the part of the Legislature to meet the necessary expenses of such committees. For, since there is no express provision to meet such expenses, this great power of the State -- intrusted by the people to their legislators -- would otherwise fail. This could not have been the intent of the framers of the Constitution.

"It is manifest that certain expenditures must be made by the state, in the way of legislative expenses, or the grant of legislative power could never be effectually exercised. No one would question legislative disbursements for comfortable assembly halls and committee rooms, or for clerks, stationery, etc. Within the same category of legitimate expenses of the Legislature or of either house comes reimbursement to members for actual expenses reasonably incurred in order to perform duties devolving on duly authorized committees of the Legislature, or of either house, when such committee members are called to other points than the capital, or when called to the capital otherwise than during the session of the Legislature."

Apart from the abstract statement that personal expenses are not allowable, whereas legislative expenses are, it is obviously impossible from these cases to discern positive and infallible rules of law controlling the question at hand. There is obvious, of course, a reluctance on the part of a majority of the courts to uphold general expense appropriations to members of the Legislature even while the members are in session and about the business of actually passing laws.

It is believed that an expense allowance to all members between sessions would be even more severely scrutinized by the courts.

There is also the proposition, emphasized particularly in the Tennessee cases, that the court will determine the fact issue of whether the appropriation, as to amount and method prescribed for the ascertainment and determination of actual expenses, is a constitutional allowance for legislative expenses, or represents increased compensation.

While this is undoubtedly sound, we shall not, in view of the amount and declarations in Senate Resolution No. 185, encompass in this opinion a judicial inquiry into these determinative fact issues.

Rather, we shall address ourselves to the fundamental question of whether in any event, in our opinion, the expenses under review may constitute legislative expense allowable under the Constitution.

It is believed that the matter of legislative and personal expense may be rationalized as follows. Legislative expense is that incident to the workings of the Legislature as an actual law-making body, as a whole, as the Legislature itself; when in session; through a special committee delegated by the Legislature while in session to work on a legislative matter between sessions; through personnel employed to close matters after adjournment; or through employees maintained between sessions for the care of the legislative halls or for maintenance of a central office or clearing house for legislative matters between sessions. These expenses are for the mutual benefit of all members -- for the Legislature itself.

Personal expense, on the other hand, is that incurred, or which may be incurred, by a member between sessions working under his own will, in his own discretion and as a matter of individual enterprise--not as a part of the Legislature in session or under extraordinary assignment from the body between sessions.

If, therefore, an allowance of expenses to individual members of the Legislature during a session, or while on a committee assignment between sessions, is presumptively legislative expense, it does not follow that an expense allowance to each member indiscriminately between sessions is likewise so. To the contrary, in our opinion the latter is presumptively personal expense.

Honorable Geo. H. Sheppard, Page 13

Essentially this view is grounded upon the historical and constitutional concept of a State legislative office, together with the practical workings of the constitutional methods with reference thereto, and the discernible weight of the cases in support of such conclusion.

Members of the Legislature are paid on a "session" basis--not upon the basis of their terms of office. They may not be members of a succeeding session. This suggests the fundamental idea that legislative services for which compensation will be paid, and in relation to which expenses will be allowed, are those actually rendered during a session, or in connection with specific matters growing out of and acted upon during a session.

To extend the allowance of expenses to all members between sessions requires, as a basis therefor, an extension of the scope of legislative duties to the point of holding that Legislators, who may not be members of the next Legislature, have general legislative duties between sessions sufficient and of such a nature as to afford a basis for legislative expense allowances.

We recognize the impropriety of declaring, and we do not declare, that a Legislator is expected to do nothing between sessions incident to his office. But we are unwilling, in the light of the authorities discussed, and of fundamental constitutional principles, and without judicial precedent to the contrary, to declare and hold that Legislators have duties, and will perform acts between legislative sessions on their own initiative and within their own discretion, which, as a matter of law, can afford a basis for legislative expense allowances.

The method of creation and manner of operation of the legislative office, by and under the Constitution, compels the conclusion, to our mind, that individual expense of members between sessions must be deemed a burden of the office and may not be declared to be legislative in nature to the extent required in upholding a blanket expense allowance by the Legislature for such purpose. As declared by one court "public office is taken and held with the emoluments and burdens which the law imposes, and the burdens are, or may be, far beyond the compensation allowed in many cases."

It must be borne in mind that the allowance of expenses during legislative sessions, and to legislative committees between sessions, and other legislative expense, is without express constitutional permission. The allowance is justified only upon the proposition that such expenses are necessary to enable the Legislature (not

Honorable Geo. H. Sheppard, Page 14

the individual Legislator) <u>to properly perform its functions.</u> It cannot be said that the general allowance of expenses to individual members between sessions is necessary for the Legislature to perform its functions, or, for that matter, necessary for the individual members to perform their functions, albeit it may be desirable, and the wish of this department, and of the courts, that it be so.

Moreover, the payment of the expenses under consideration is to be out of an appropriation for contingent expenses of the 47th Legislature. It may well be doubted whether an expense allowance to the members of the 47th Legislature after adjournment of the Regular Session, and until, presumably at least, the Regular Session of the 48th Legislature, is an expense of the 47th Legislature when such members are not under any special assignment from the 47th Legislature and will not, in many instances, even be members of the succeeding Legislature.

It is therefore the considered opinion of this department, after careful deliberation, that the allowance, by Senate Resolution No. 185 of the 47th Legislature, of Fifty Dollars per month for stenographic and other expenses, to members of the Senate from the adjournment of the Regular Session of the 47th Legislature until the convening of the next special or regular session, is invalid.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Zollie C. Steakley_
Assistant

ZCS:RS

APPROVED AUG 22, 1941

_Gerald C. Mann_
ATTORNEY GENERAL OF TEXAS

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE